# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 13-cr-10200-GAO |
| v. | **PROVISIONALLY FILED UNDER SEAL** |
| DZHOKHAR A. TSARNAEV, | |
| Defendant | |

## RESPONSE TO DEFENDANT DZHOKAR TSARNAEV'S MOTION FOR RECUSAL AND FOR DISCLOSURE

Defendant Dzhokhar A. Tsarnaev's motion for recusal and for disclosure should be denied. As discussed in greater detail below, there is no basis for recusal or disclosure in this case.

*First*, Tsarnaev's recusal motion is untimely. A recusal motion must be made at the earliest moment after acquiring knowledge of the relevant facts, and, in this case, each of the remarks that Tsarnaev identifies in his motions have been publicly available for more than a year, and the majority for more than eight years. Transcripts of this Court's remarks during the trial likewise were made available to the parties years ago. Tsarnaev makes no attempt to explain in his supporting memorandum ("Def. Mem.") why he failed to diligently act on the publicly available remarks and/or in-court statements and timely raise them in a recusal motion or in his appeal. The fact that this case has been pending on appeal since 2016 does not diminish Tsarnaev's responsibility for timely seeking recusal, as he could have raised a recusal claim in that appeal or moved this Court to recuse while the appeal was pending, as the Court retained jurisdiction to consider such a claim. Because Tsarnaev failed to avail himself of either option, his recusal motion should be denied as untimely.

1

*Second*, untimeliness aside, Tsarnaev fails to identify circumstances that merit recusal. He cannot sustain his argument that this Court's remarks contravened Canon 3(A)(6) of the Code of Conduct for United States Judges.    The Canon expressly exempts "public statements made in the course of the judge's official duties, . . . explanations of court procedures, or . . . scholarly presentations made for purposes of legal education."    https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges#d.    That exemption applies to all the statements identified by Tsarnaev, none of which constituted a public comment "on the merits" of his claim of juror bias.    The Court's remarks, likewise, fell outside the ambit of *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001), as the First Circuit emphasized that that decision was based on "the particular events in, and character of, a highly idiosyncratic case," and added that, going forward, recusal claims must be considered on a "case-by-case basis."    *Id.* at 172.    Given the nature and context of the Court's remarks, none of them violated the constitutional requirement that a judge satisfy the appearance of impartiality.

*Third*, Tsarnaev's motion for additional disclosures should be denied.    Unlike the circumstances in *United States v. Sampson*, 148 F. Supp. 3d 75, 116 (D. Mass. 2015), where the government sought additional information about an event that the district court had voluntarily disclosed to the parties, Tsarnaev's request is a fishing expedition for remarks that might bolster his patently meritless recusal motion.    The government has no doubt that the Court would disclose any facts sounding within section 455.    But Tsarnaev's motion for disclosure should be denied.

**LEGAL STANDARDS**

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). As the First Circuit has recognized, section 455(a) "seeks to balance two competing policy considerations: first, that courts must not only be, but seem to be, free of bias or prejudice, and second, the fear that recusal on demand would provide litigants with a veto against unwanted judges." *In re Boston's Children First*, 244 F.3d at 167 (cleaned up). Recusal under section 455(a) thus is appropriate "only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).

Because "[a] motion to recuse is a serious matter" and "courts will reject what appear to be strategic motions to recuse a judge whose rulings have gone against the party," the First Circuit has required, in general, that "a party must raise the recusal issue at the earliest moment after [acquiring] knowledge of the [relevant] facts." *In re United States*, 441 F.3d 44, 65 (1st Cir. 2006) (cleaned up). Moreover, where "the facts upon which the motion relies are public knowledge," courts have applied this timeliness requirement "even if the movant does not know them." *United States v. Siegelman*, 640 F.3d 1159, 1188 (11th Cir. 2011) (per curiam) (citing *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 957-59 (2d Cir. 1978)). A party seeking recusal under section 455 thus "cannot claim ignorance of key facts easily discoverable—they are charged with knowledge of all facts known or knowable, if true, with due diligence, from the public record or otherwise." *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liability Litig.*, 601 F. Supp. 2d 1120, 1131 (D. Minn. 2009) (cleaned up).

## ARGUMENT

### A.    Tsarnaev's Recusal Motion is Untimely.

As a threshold matter, Tsarnaev's recusal motion is untimely, as each of the remarks that

he identifies in his motion have been publicly available for years:

- The Boston College Law School forum took place on April 6, 2016, and stories about it have been available on the Internet since April 7, 2016.    *See* https://www.wbur.org/morningedition/2016/04/07/judge-tsarnaev-bc-law-forum and https://www.wgbh.org/news/local/2016-04-07/tsarnaev-trial-judge-revisits-issues-of-race-the-death-penalty-and-fairness.

- The panel discussion sponsored by the Administrative Office of the U.S. Courts ("U.S. Courts panel discussion") took place on November 17, 2016, and has been available on the Internet since May 7, 2017.    *See* https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience, and https://www.youtube.com/watch?v=OEudQAY9c6Q.

- The *Criminal* podcast episode "Did We Get It Right?" was broadcast and made publicly available on the Internet on May 12, 2023, more than one and a half years ago.    *See* https://thisiscriminal.com/episode-218-did-we-get-it-right-5-12-2023 and https://podcasts.apple.com/us/podcast/did-we-get-it-right/id809264944?i=1000612747092.

Tsarnaev also points to this Court's comments to the jurors during a lobby conference held on

March 3, 2015, when the verdict was returned on May 15, 2015, and at the sentencing hearing on

June 24, 2015, all of which were made available to the parties more than eight years ago.    *See*

ECF Docket No. 1133-1 (filed March 9, 2015); ECF Docket No. 1661 (filed May 10, 2016); ECF

Docket No. 1476 (filed June 24, 2015).

Tsarnaev makes no attempt to explain why he failed to diligently learn of the Court's

remarks or should be permitted to assert them in support of a recusal motion years later.    As a

result, his recusal motion should be denied as untimely.    *See, e.g., Siegelman*, 640 F.3d at 1189

(holding that recusal motion was untimely because the basis for the motion – the district judge's

"ownership interest in two aviation companies that engage in business with agencies of the United States" was "readily available" to the defendant "prior to trial" via the Internet and the judge's public financial-disclosure reports); *Nat'l Auto Brokers Corp*, 572 F.2d at 958–59 (holding that recusal motion was untimely where district judge's former membership in law firm "had for years been a matter of public knowledge and that firm's representation of [defendant] had been known to plaintiff's counsel for months prior to trial"); *United States v. Hubbard*, 2022 WL 281548, at *2 (D. Hawai'i Jan 30, 2022) ("Defendant's Motion to Recuse is untimely as the factual basis for his Motion occurred more than ten years before proceedings began and was publicly available at the time."); *Armenian Assembly of America, Inc. v. Cafesjian*, 783 F. Supp. 2d 78, 88 (D.D.C. 2011) (holding recusal motion untimely because "there is no reason why Plaintiffs could not have performed a simple internet search and discovered the alleged 'connection' between the Court and Cafesjian before the parties devoted substantial resources trying the case before the undersigned"); *United States v. Olis*, 571 F. Supp. 2d 777, 792 (S.D. Tex. 2008) (holding recusal motion untimely because factual allegations on which defendant based his motion all "stem from sources of public information that were available well before Olis filed his motion to vacate on October 5, 2007," and because defendant failed to argue that his delay was either necessary or reasonable).

Tsarnaev's long-pending appeal does not excuse his dilatory recusal motion. Tsarnaev could have raised his recusal claim in that appeal, as he filed his opening brief on December 27, 2018, long after the Court's remarks at trial, the Boston College Law School forum, and the U.S. Courts panel discussion. The First Circuit would presumably have reviewed such a claim for plain error, as it has done in other cases in which a party raises a recusal claim for the first time on appeal. *See United States v. Caramadre*, 807 F.3d 359, 374 (1st Cir. 2015) ("Given the

importance of impartiality, we think that the better rule is that a claim of judicial bias, raised for the first time on appeal, should be reviewed for plain error.  Consequently, we reject the government's waiver argument and hold instead that Caramadre's bias-based recusal claim engenders plain error review."); *United States v. Reynolds*, 646 F.3d 63, 74 (1st Cir. 2011) ("Since Reynolds makes this claim [under section 455(a)] for the first time on appeal, plain error review applies, and Reynolds cannot meet the prejudice prong."); *United States v. Cruz-Mercado*, 360 F.3d 30, 36 (1st Cir. 2004) ("First, Cruz neither objected to these comments nor sought recusal of the trial judge based on partiality, limiting our review to assessing only whether plain error occurred.").

Alternatively, Tsarnaev could have filed his recusal motion directly in this Court, as several courts have held that a notice of appeal does not divest a district court of jurisdiction to consider such a request.  *See, e.g., Lopez Dominguez v. Gulf Coast Marine & Assocs., Inc*., 607 F.3d 1066, 1073 (5th Cir. 2010); *Oyekwe v. Research Now Group Inc.*, 2021 WL 9881278, at *1 (N.D. Tex. June 1, 2021); *Guerrero v. Weeks*, 2013 WL 5934303, at *2 (E.D. Va. Nov. 5, 2013). But Tsarnaev failed to avail himself of either option, and, once again, he makes no attempt to explain that delay in his supporting memorandum or justify why this Court should consider it at this late date.   As a result, his recusal motion is untimely and can be denied on that basis alone.

**B.**    **No Reasonable Person Would Doubt the Court's Impartiality**.

In addition to being untimely, Tsarnaev's recusal motion fails on the merits.   Tsarnaev asserts (Def. Mem. at 14) that this Court's remarks at the Boston College Law School forum, the U.S. Courts panel discussion, and the *Criminal* podcast all "contravened" Canon 3(A)(6) of the Code of Conduct of United States Judges, the decision in *In re Boston's Children First*, and the

6

constitutional requirement that a judge satisfy the appearance of impartiality.   He also asserts (Def. Mem. at 17) that "this Court's statements and actions in the courtroom buttress the case for recusal."   None of those assertions is well taken.

### 1.    None of the Court's Remarks Violated Canon 3(A)(6).

Canon 3(A)(6) provides:

> A judge should not make public comment on the merits of a matter ending or impending in any court.   A judge should require similar restraint by court personnel subject to the judge's direction and control.   The prohibition on public comment on the merits does not extend to public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education.

https://www.uscourts.gov/judges-judgeships/code-conduct-united-states-judges. The First Circuit has cautioned that Canon 3(A)(6) and section 455(a) do not "overlap perfectly," as "it is possible to violate the Code without creating an appearance of partiality; likewise, it is possible for a judge to comply with the Code yet still be required to recuse herself."   *In re Boston's Children First*, 244 F.3d at 168 (cleaned up).

None of the remarks that Tsarnaev identifies runs afoul of Canon 3(A)(6). To begin, none constitute a public comment "on the merits" of an issue in the case, including specifically Tsarnaev's claim that Jurors 138 and 286 should have been stricken for cause on account of bias. Judges improperly comment on "the merits" of a case when they publicly "disclose [their] views on the factual and legal matters at the heart of the case."   *United States v. Microsoft Corp*., 253 F.3d 34, 112 (D.C. Cir. 2001) (en banc) (per curiam); *see also In re Charges of Judicial Misconduct*, 769 F.3d 762, 793 (D.C. Cir. 2014).   In *Microsoft Corp.*, a district judge, in a pending case, gave "secret interviews to select reporters" during which he discussed his "opinions about the credibility of witnesses, the validity of legal theories, the culpability of the defendant,

the choice of remedy, and so forth [which] all dealt with the merits of his actions." 253 F.3d at

112. The judge told the reporters, among other things, of "his distaste for the defense of

technological integration—one of the central issues in the lawsuit," described "Microsoft's

conduct, with particular emphasis on what he regarded as the company's prevarication, hubris, and

impenitence," likened Microsoft's writing of incriminating documents to drug traffickers, and

"secretly divulged to reporters his views on the remedy for Microsoft's antitrust violations." *Id.*

at 109-11. The D.C. Circuit concluded that "[t]he public comments were not only improper, but

also would lead a reasonable, informed observer to question the District Judge's impartiality."

*Id.* at 115. Notably, the D.C. Circuit distinguished the district court's actions from "[d]iscreet

and limited public comments [that] may not compromise a judge's apparent impartiality." *Ibid.*

The First Circuit also considered a district judge's comments regarding "the merits" of a

pending matter in *In re Boston's Children First*. In that case, the district court entered a

procedural order stating it would resolve the issue of standing before considering a motion for

class certification, and the plaintiffs subsequently moved for class certification, analogizing their

case to *Mack v. Suffolk County*, 191 F.R.D. 16 (D. Mass. 2000), in which class certification had

preceded the resolution of standing issues. 244 F.3d at 165. Plaintiff's counsel were

subsequently quoted in a *Boston Herald* article making pejorative comments about the judge's

handling of the case, and the judge's responsive letter to the *Herald* – citing inaccuracies in its

coverage – resulted in a follow-up article that quoted the judge as saying: "In the [*Mack*] case,

there was no issue as to whether [the plaintiffs] were injured. It was absolutely clear every

woman had a claim. This is a more complex case." *Id.* at 166. The district court's comments

led the First Circuit to order recusal, as it found that a reasonable person might view the remarks

"as a preview on the ruling on the merits of petitioner's motion for class certification, despite the fact that defendants had not yet filed a response to that motion." *Id.* at 169-71.

After the First Circuit's opinion was released and the district judge petitioned for rehearing en banc, the panel in *In re Boston's Children First* consulted informally with the three non-panelist active judges and noted that they "are currently of the view that, even if the district court's statement to the reporter comprised a comment on the merits, it does not create an appearance of partiality such as to require recusal under 28 U.S.C. §455(a)," and were "particularly concerned that section 455(a) not be read to create a threshold for recusal so low as to make any out-of-court response to a reporter's question the basis for a motion to recuse." *Id.* at 172. The panel reiterated its view that recusal was required "based on the particular events in, and character of, a highly idiosyncratic case," but emphasized "the continuing need for a case-by-case determination of such issues." *Ibid.*

This case is a world apart from the circumstances at issue in *Microsoft Corp.* or *In re Boston's Children First*. To begin, none of the remarks identified in Tsarnaev's motion constitute a comment "on the merits" of a pending legal issue in the case, let alone a specific comment on his claim that Jurors 138 and 286 should have been stricken for cause on account of bias. As Tsarnaev acknowledges (Def. Mem. at 5), the Court prefaced its remarks at the Boston College Law School forum by stating that it would "not address the merits of any of the legal issues in the case," and that "the case is in the very early stages of an appeal, and it would be inappropriate for me to make any comments about any potential appellate issues." Exhibit A to Recusal Motion at 1-2. This Court adhered to that approach and addressed how it conducted the trial management in this case and in *United States v. Mehanna* in broad strokes and at a high level

of generality.    *Id.* at 2-8.    The Court likewise discussed only generally the mechanics of its trial management in this case in its remarks at the U.S. Courts panel discussion and during the *Criminal* podcast.    In neither instance did the Court discuss the merits of an issue in this case.    *See* https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience; Exhibit B to Recusal Motion at 4-7.    At most, the Court's remarks constitute the species of "[d]iscreet and limited public comments" that do not call into question its impartiality.    *See Microsoft*, 253 F.3d at 115.

Nonetheless, Tsarnaev asserts (Def. Mem. at 16) that a reasonable person could view some of this Court's remarks as an "anticipatory" defense of its ruling denying his motion to strike Jurors 138 and 286 for cause on account of bias.    He is wrong.    Tsarnaev cites no case requiring recusal based on a speculative interpretation of generic statements as an "anticipatory defense" of a ruling, and his attempt to analogize this case to *In re Boston's Children First* falls flat.    The plaintiffs in that case had already sought class certification when the district judge characterized the lawsuit as being a "more complex case" than another in which class certification had been granted, and the First Circuit found, under the circumstances, that a reasonable person might view the judge's comments "as a preview on the ruling on the merits of petitioner's motion for class certification, despite the fact that defendants had not yet filed a response to that motion."    244 F.3d at 169-71. Here, by contrast, Tsarnaev fails to grapple with the inconvenient fact that he debuted his appellate claim concerning Jurors 138 and 286 on December 27, 2018, more than two years after this Court participated in the Boston College Law school forum and the U.S. Courts panel discussion. Tsarnaev, in other words, is necessarily suggesting that a reasonable person would believe that this Court correctly anticipated that Tsarnaev would appeal (amongst the hundreds of pretrial and trial rulings) the denial of his motion to strike Jurors 138 and 286 for cause, and that it used the occasion

of these two events to provide an "anticipatory defense" of that ruling.    No reasonable person would harbor such an unrealistic, if not farcical, view.    *See Samuel v. University of Pittsburgh*, 395 F. Supp. 1275, 1279 (W.D. Pa. 1975) (in denying recusal motion under section 455(a), noting that "the alleged 1973 statements with which counsel takes issue could not have concerned attorneys' fees in this case because counsels' petition for such fees was not filed until March of 1975"), *vacated on other grounds*, 538 F.2d 991 (3d Cir. 1976).

In any event, Tsarnaev misconstrues the remarks that the Court made.    For example, he highlights (Def. Mem. at 3) that after stating that it would not make any comments about any potential appellate issue in this case at the Boston College Law School forum, the Court said the following:

> What I will talk about is some issues regarding the trial management that arise in what we might call high-profile cases, and particularly issues affecting jury management, such as how in the two cases [*Tsarnaev* and *Mehanna*] we managed the mechanics and the logistics of the trials to assure that the defendant, in each case, was given what the Sixth Amendment guarantees, a public trial that is fully fair.

Exhibit A to Recusal Motion at 2.    A reasonable person would understand this remark as simply providing an overview of the presentation that would follow and how the Court sought to achieve what the Sixth Amendment guarantees in every case, "a fair trial before an impartial jury." *United States v. Tsarnaev*, 595 U.S. 302, 324 (2022).    No reasonable person would understand it as an "anticipatory defense" of this Court's ruling denying Tsarnaev's motion to strike Jurors 138 and 286 for cause.    Tsarnaev also highlights (Def. Mem. at 3) the following remark at that same forum: "I have to say, by the way, I'll just take this opportunity to say, the public-spiritedness of these jurors was remarkable throughout, both the ones who were selected and the ones that were not."    Exhibit A to Recusal Motion at 6.    No reasonable person would find this remark as

anything other than overall praise for the petit jury and the jury venire in this case as a whole rather than an "anticipatory defense" of the Court's rulings with respect to any specific juror.

Tsarnaev highlights (Def. Mem. at 4) that the Court noted that "[o]ne of the features of the modern age" is exposure to social media and that this has caused concern for courts – including that jurors "will be involuntarily subjected to others, like Facebook friends, to improper information, which they shouldn't' have" – and described the steps it took in this case and others to ensure this does not happen.    Exhibit A to Recusal Motion at 6.    He also highlights (Def. Mem. at 4) that as an aside during this discussion, the Court said the following:

> By the way, I have no doubt that the parties were at least spot-checking juror social media sites to watch for any indication of breach of duty, and we heard of none.
>
> But beyond exhortation and constant reminders and maybe check-ups, appeals to their better natures, I'm not sure much can be done.    We ask them to do their duty, and I think they do.

Exhibit A to Recusal Motion at 7.    A reasonable person would understand these remarks as a description of this Court's views about how best to ensure that members of a seated jury are not exposed to outside influences, both in this case and in others, and not a comment about anything that happened during the jury selection process.    Moreover, the Court did not suggest that these measures could guarantee effectiveness, and no reasonable person would view these remarks as an "anticipatory defense" against a claim that its efforts had failed.

Tsarnaev also highlights (Def. Mem. at 5) the WGBH article about the Boston College Law forum, which states that during a question-and-answer session at the end, the Court "was asked if he has any lingering questions or doubts about the Boston Marathon trial outcome.    He said no.    He had moved on."    https://www.wgbh.org/news/local/2016-04-07/tsarnaev-trial-

judge-revisits-issues-of-race-the-death-penalty-and-fairness. A reasonable person would understand this answer as simply a reflection of the commonly held view about the nature of the judicial craft, rather than any form of "anticipatory defense" of the Court's rulings in this case. *See, e.g.,* Stewart J. Schwab, *In Memoriam: Sandra J. O'Connor – Justice O'Connor as the Good Judge*, 137 HARV. L. REV. 1809, 1811 (May 2024) ("In approaching a case, Justice O'Connor wanted to weigh all arguments and perspectives, make a decision, write an opinion explaining what facts and factors justified the decision, and move on.  'Don't look back' was a favorite admonition."); Hon. Dana M. Levitz, *So, You Think You Want to be a Judge*, 38 U. BALT. L. REV. 57, 68 (Fall 2008) ("A judge has to have the ability to make a thoughtful, reasoned decision and then move on to the next case without dwelling on the result."); Kenneth W. Starr, *The Courts of Appeals and the Future of the Federal Judiciary*, 1991 WISC. L. REV. 1, 3 ("Now in saying this, I am mindful that, above all, judges are called upon to judge.  They are there to decide cases and then to move on to the next case.").

Tsarnaev additionally highlights (Def. Mem. at 6) the fact that during the U.S. Courts panel discussion, the Court said: "And by and large my experience has been jurors take their responsibility seriously and they try to do, to live by those guidelines."  *See* https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience.  A reasonable person would understand this remark as simply reflecting the Court's experience trying criminal cases as a federal and state judge over the course of a career spanning more than four decades, and not an assessment of what the jury did in this particular case.  The same holds true of the Court's remarks about its experience with juries and their compliance with instructions during the *Criminal* podcast.  *See* Exhibit B to Recusal Motion at 4-7.

13

Hence, none of the Court's remarks at these two events or in the *Criminal* podcast were a comment "on the merits" of Tsarnaev's claim that two seated jurors should have been stricken for cause on account of bias, and they therefore did not run afoul of Canon 3(A)(6).    They also did not run afoul of Canon 3(A)(6) because, even assuming *arguendo* that one or more of this Court's remarks could possibly be construed as a comment "on the merits" of his juror bias claim, that canon by its terms does not extend to "public statements made in the course of the judge's official duties, to explanations of court procedures, or to scholarly presentations made for purposes of legal education."    Each of the events in question fall under these exceptions.    The Boston College Law School forum took place at that law school and was a discussion about national security issues and the role of the judiciary, and this Court's fellow panel members included three Boston College Law School professors.    *See* https://lawmagazine.bc.edu/2016/04/fairness-was-foremost-for-marathon-bombing-judge/.    The U.S. Courts panel discussion examined the jury process and selection, jury duty myths, the juror experience, and how high-profile and complex trials are handled, it was moderated by a law professor, and this Court's fellow panel members were Judge Reggie Walton of the U.S. District Court for the District of Columbia and Robin Tabora, the Clerk of Court for the U.S. District Court for the District of Connecticut.    *See* https://www.uscourts.gov/news/2017/03/02/inside-look-jury-experience.    The Court's remarks during these events plainly constituted scholarly presentations made for the purpose of legal education, and they consequently did not contravene Canon 3(A)(6).    *See In re Charges of Judicial Misconduct*, 769 F.3d at 795 (finding that even if judge's remarks during law school presentation constituted comments about the "merits" of an impending case, "that discussion would fall withing the 'scholarly presentation' exception to Canon 3A(6).").

Similarly, this Court's public descriptions of the mechanics of the trial in this case, including the process of jury selection, also fell outside the stated reach of Canon 3(A)(6).   *See Microsoft Corp.*, 253 F.3d at 112 (distinguishing between "purely procedural matters," which a judge may properly discuss in public under Canon 3(A)(6), and the judge's "views on factual and legal matters at the heart of the case," upon which the judge may not publicly comment).

### 2.    None of the Court's Remarks Otherwise Would Lead A Reasonable Person To Doubt Its Impartiality.

Nor did any of this Court's remarks during these events run afoul of *In re Boston's Children First* or the constitutional requirement that a judge satisfy the appearance of impartiality.   As noted, the panel in *In re Boston's Children First* stated that recusal was required "based on the particular events in, and character of, a highly idiosyncratic case," but added that the other three active judges of the court disagreed and that, "[i]n the circumstances, it seemed to the panel fair to acknowledge a difference of views among the active judges, and the continuing need for a case-by-case determination of such issues."   244 F.3d at 172.   That decision consequently did not establish any kind of across-the-board rule as Tsarnaev appears to suggest, and he fails to demonstrate that the circumstances here resemble the unique context in *In re Boston's Children First*.   Because Tsarnaev's arguments all involve highly speculative claims concerning the supposed appearance of bias, his constitutional arguments for recusal likewise fail.

### 3.    The Court's Comments to the Jury Do Not Support Recusal.

Tsarnaev further asserts (Def. Mem. at 17) that this Court's "statements and actions in the courtroom buttress the case for recusal."   But Tsarnaev badly misconstrues the remarks he highlights, takes them out of context, or both.

Tsarnaev first notes (Def. Mem. at 8) that during an *ex parte* lobby conference with the seated jurors on March 3, 2015, this Court said "[y]ou and I are in this together" and "[w]e're on the same team here," after which the Court shook the juror's hands.   The full context of this Court's remarks dispels any notion that they support a basis for recusal:

> Jurors – you're real jurors now.   I just wanted to come in and just come in and just personally thank you for your anticipated service in this case.   This is a very important responsibility, as I'm sure you all understand.   You and I are in this together.   We're on the same side here.   Our side is justice.   Our job is to be as fair and impartial as we possibly can, and I know you all can do it because I have seen jurors over the years do exactly this.   It's going to be a serious responsibility.   It's one you can handle.   We're very confident in that.   And I just wanted to express that to you.
>
>                                      \*   \*   \*
>
> So that's really all I have to say except, finally, the Supreme Court of the United States has a very interesting tradition.   Before they go out to the bench to hear argument and before they conference a case, they all shake hands with each other, and I thought we'd do that because we're now teammates.   I'm going to go around, and you can do it.

(The judge shakes hands with the jurors).

ECF Docket No. 1133-1, at 20, 22.   No reasonable person would understand that the Court's remarks were anything other than an affirmation that the duties of the Court and jury were the same – "our side is justice" and 'to be as fair and impartial as we possibly can" – as well as an exhortation to the jury to live up to that duty and responsibility.

Tsarnaev next cites (Def. Mem. at 8) portions of this Court's remarks to the jury after it had returned its verdict in this case.   Again, the full context of this Court's remarks is key:

> So, as I was saying, I want to thank you for your service.   And I express that thanks not only on my own behalf, which I do sincerely, but more importantly, on behalf of the citizens of Massachusetts whom you represent for the purposes of this trial.

We ask of our fellow citizens active engagement and participation in the work of self-government. In particular, we ask our fellow citizens to participate in administering justice fairly and impartially by sitting as trial jurors. We asked of you the important and difficult task of judging the evidence in this case and of rendering a just verdict guided by your best judgment in evidence.

I want especially to commend the alternate jurors. After all the time and attention you gave in listening to the evidence, you learned that you would not be part of the decision. That must be frustrating. Perhaps it is a relief. In any event, it is necessary to have alternates available, and your service has been just as vital to the process as that of the deliberating jurors.

The inconvenience to all of you in serving on this case has been considerable, yet you have each borne that inconvenience with grace and understanding. The seriousness and responsibility with which you have performed your service as jurors should stand as a model for future juries.

Abraham Lincoln once said, "There is no grievance that is a fit object for redress by mob law." Your service as jurors in this case has been the very antithesis of mob law. The issues have been thoroughly presented to you, and you have thoughtfully resolved them. Obviously, the facts and circumstances of this case arouse powerful emotions, but on behalf of a community seriously aggrieved, you have demonstrated convincingly that even in such circumstances, men and women of honesty and goodwill can set aside emotions and make careful, rational and solemn judgments about guilt or innocence and life or death. You can, you should, be justly proud of your service in this case.

ECF Docket No. 1661-16 to 1661-17. No reasonable person would understand the Court's observation as anything other than a recognition that the jury had done its duty to render a fair and just verdict, rather than a suggestion about what a fair and just verdict might be. Indeed, this Court's remarks are little different from those made by the district judge in *Sampson* after the jury returned a sentence of death following the second penalty-phase trial in that case:

Since the founding of our nation, individual citizens, like yourselves, have rendered important decisions as jurors. We regularly ask citizens to participate in administering justice fairly and impartially by sitting as trial jurors.

In this case, we have asked you to make more than the ordinary sacrifice. The trial was long, some of the evidence difficult, and the question for decision of the highest importance in gravity.

17

You serve as a model for all your fellow citizens and all future jurors. You performed your service with seriousness and responsibility. In the face of evidence that arouses powerful emotions, you demonstrated convincingly that men and women of honesty and good will can put aside emotions to make careful, rational, and solemn judgments about life and death. You can be proud of your service in this case.

ECF Docket No. 2957, at 58, *United States v. Sampson*, No. 01-cr-10348-LTS.

Finally, Tsarnaev cites (Def. Mem. at 9) this Court's statements during the sentencing hearing as supporting his recusal motion. Here, too, context is key:

First, I want to acknowledge the presence of a number of the jurors and alternates who participated in the trial of this case. They are here at my invitation. It is my practice, after a verdict in every criminal trial, to talk informally with the discharged jurors, principally to thank them again personally for their service. It is my habit on such occasions to invite them to return to attend the sentencing hearing, and sometimes they do.

Consistent with that practice, I extended a similar invitation to the jurors in this case to attend. As you can see, many of them accepted and are here. Because so many were interested and because we have limited public seating in the courtroom, as a courtesy and as a gesture of respect for their service, I authorized them to sit in the jury box. I do want to emphasize, of course, that they are present now. They are no longer a jury, but a group of citizens who are here, each in his or her individual capacity. Nonetheless, I take this occasion again to thank the now-former jurors for their exceptional service.

Much of the evidence in this case was hard to hear and see. We made great demands on their time and asked them to insulate themselves from potential extraneous influences in ways that an ordinary person would find difficult or uncomfortable. We asked them to make significant changes to their daily routines and to spend a long time away from work and other pursuits. We also asked them to accept the responsibility to set aside any preconceived ideas, and instead to reason from the evidence presented in this trial to any conclusions and not the other way around. Above all, we asked them, as they acted to perform their high duty, to be utterly fair and impartial in their deliberations. Their careful verdict satisfies me that they did what they were asked to do. Theirs was not the only possible verdict, but it is certainly a rational one on the evidence.

That they performed their duty so well and faithfully came as no surprise to me. I've been presiding over jury trials in this state for more than 30 years, and I know how seriously Massachusetts jurors take the responsibilities of jury service.

18

> I had no doubt that we could select a jury for this case that would accept and perform their high duty conscientiously and justly.    The proof is in the pudding.

ECF Docket No. 1476, at 3-5.    No reasonable person would construe these remarks as anything other than a statement that the jury, consistent with its duty, had reached a careful and rational verdict based on the evidence – even though "[t]heirs was not the only possible verdict" – rather than any form of suggestion that the only possible verdict in the case was a sentence of death.

### C.    Tsarnaev's Request for Disclosures Should Be Denied.

Tsarnaev alternatively asks this Court (Def. Mem. at 18-20) to "disclose the dates, circumstances, and substance of all public comments that Your Honor has made about this case, as well as the dates, circumstances, and substance of all ex parte communications with the jurors." The request should be denied.

Although the First Circuit has said that there is nothing in section 455 that would prevent the party seeking recusal from trying to "engage in discovery incident to a recusal motion," it has made clear that "the allowance of such discovery is within the sound discretion of the court."    *In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997) (citing, *e.g,*, *Cheeves v. Southern Clays, Inc.*, 797 F. Supp. 1570, 1580 (M.D. Ga. 1992)).    Here, Tsarnaev is largely making a speculative request for discovery regarding other possible events in which the Court may have spoken, or other comments it may have made to the jury.    This is altogether different from the circumstances in *Sampson*, where the government sought additional information about an event following a voluntary disclosure by the district judge under 28 U.S.C. §455(e).    *See Sampson*, 148 F. Supp. 3d at 115.    Indeed, by requesting evidence he cannot identify from public sources, Tsarnaev only serves to undercut his argument that the Court has created an appearance of bias.    Regardless, his request for disclosure is nothing more than a fishing expedition and should be denied.    *See*

19

*Cheeves*, 797 F. Supp. at 1582 (in denying request for discovery in aid of recusal motion under 28 U.S.C. §§144 and 455(a), stating that "[e]ither the alleged bias has already been manifested in some way within the knowledge, information or belief of the party-affiant, or the effort to depose the judge would be a classic fishing expedition").

The government, once again, has every expectation that if the Court believes its participation in any event or any possible extra-judicial statement might cause a reasonable person to doubt its impartiality, it will voluntarily disclose it to the parties.   But Tsarnaev's motion for disclosure should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Tsarnaev's motion for recusal and for disclosure should be denied.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: */s/ Mark T. Quinlivan*
NADINE PELLEGRINI
JASON A. CASEY
MARK T. QUINLIVAN
Assistant U.S. Attorneys
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3606
mark.quinlivan@usdoj.gov

JEFFREY B. KAHAN
Deputy Chief, Capital Case Section
U.S. Department of Justice
1331 F St., N.W., Suite 650
Washington, D.C. 20530

Dated:   September 17, 2024

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document this document was served by email on counsel for the defendant on September 17, 2024.

                                   By:    */s/ Mark T. Quinlivan*
                                          MARK T. QUINLIVAN
                                        Assistant U.S. Attorney

Date:  September 17, 2024